UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA     CRIMINAL ACTION

VERSUS     No. 13-107

BENJAMIN M. GELLER     SECTION I

### ORDER & REASONS

Before the Court is a motion[1] for a reduction in restitution amount pursuant to 18 U.S.C. § 3664(j)(2) filed by defendant Benjamin M. Geller ("Geller"). The government opposes Geller's motion.[2] For the reasons that follow, the Court denies the motion.

### I. BACKGROUND

#### a. Geller's Criminal Case

The facts giving rise to Geller's conviction are set forth in the factual basis.[3] In short, Geller served as a sports agent for Frank W. Warren, III ("Warren"), a professional football player for the New Orleans Saints.[4] While in this role, Geller helped Warren establish a trust known as the Frank Warren Irrevocable Trust (the "Trust") for the benefit of Warren's family.[5] Geller was appointed trustee.[6] Warren subsequently applied for and obtained a life insurance policy worth approximately

---

[1] R. Doc. No. 75.
[2] R. Doc. No. 79.
[3] R. Doc. No. 13.
[4] *Id.* at 1.
[5] *Id.*
[6] *Id.*

$1,000,000.00.[7] Upon Warren's death, the Trust was to be funded from the proceeds of the life insurance policy.[8] Warren's family, including his wife, Terrell Warren a/k/a Terrell LeBeaux ("Mrs. Warren"), were beneficiaries of the Trust.[9] Warren died in December 2002 following a heart attack.[10]

Between 2003 and 2007, Geller unlawfully took and spent $592,319.66 from the Trust for his personal benefit, including personal travel, airfare, lodging at various destinations, home furnishings, entertainment, repaying his debts, and making tax payments.[11] When Geller began to receive questions about the status of the Trust, he attempted to mislead Mrs. Warren into believing the Trust funds were intact by depositing funds from a Texas bank account in the name of the Trust into Mrs. Warren's Louisiana bank account.[12]

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 2.
[11] *Id.*; *see also* R. Doc. No. 16, at 1 (preliminary order of forfeiture). Geller's destinations included New York, Nevada, New Mexico, Hawaii, and the U.S. Virgin Islands. R. Doc. No. 13, at 2.
[12] R. Doc. No. 13, at 3.

2

On June 14, 2013, Geller pleaded guilty pursuant to a plea agreement[13] to one count of wire fraud pursuant to 18 U.S.C. § 1343.[14] On October 10, 2013, he was sentenced to 60 months of imprisonment and ordered to pay $592,319.66 in restitution.[15] Geller has fully served his prison sentence and completed his term of supervised release.[16]

### b. The Civil Lawsuit

In 2011, Mrs. Warren filed a civil lawsuit in this district individually and on behalf of her children.[17] The second amended complaint (the "complaint") in that lawsuit named as defendants Geller, Arlyn Nelson ("Nelson"), Genworth Life and Annuity Insurance Company ("Genworth"), Continental Casualty Company ("Continental Casualty"), Morgan, Keegan & Company ("Morgan Keegan"), two

---

[13] R. Doc. No. 12. The plea agreement states that Geller "[w]aives and gives up any right to appeal or contest his guilty plea, conviction, sentence, fine, *and any restitution imposed* . . ." *Id.* at 2 (emphasis added). The government has not moved for specific enforcement of the plea agreement. Because of its failure to do so, the government has waived its right to seek the benefit of Geller's waiver. *See United States v. Del Toro-Alejandre*, 489 F.3d 721, 722 (5th Cir. 2007) (explaining that an informed and voluntary waiver of post-conviction relief is a contract between the parties, and its enforcement must therefore "be asserted by the government or deemed waived, functioning much like affirmative defenses"); *United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006) (explaining that a waiver in a plea agreement is "enforceable to the extent that the government invokes [it]" and finding the defendant's waiver of appellate rights non-binding because the government waived the issue). The Court notes that this finding does not affect the outcome in this case because, as discussed below, Geller's motion is meritless.
[14] R. Doc. No. 8 (minute entry from initial appearance and arraignment).
[15] R. Doc. No. 33 (judgment), at 2–6.
[16] R. Doc. No. 58, at 1. The government contends that Geller is in default on his restitution obligation. R. Doc. No. 79, at 2; *see also* R. Doc. No. 79-1 (restitution payment history) and R. Doc. No. 33 (judgment ordering Geller to pay $500 per month in restitution following release).
[17] *Warren v. Geller et al.,* E.D. La. Case No. 11-2282, R. Doc. No. 1 (complaint).

Morgan Keegan employees (Beatriz Cadena and Frances "Polly" Moore), DEF Insurance Company and XYZ Insurance Company.[18]

The complaint alleged that, as an insurance agent broker for Genworth, the insurance company that had issued the $1,000,000.00 life insurance policy, Nelson represented that he was licensed to write life insurance policies and annuities in Louisiana when in fact he was not.[19] Nelson allegedly instructed Geller to have proposed Trust documents executed, notarized, and sent to him.[20] According to the complaint, the Trust documents were incomplete and never approved by Genworth.[21] Nelson and Geller then allegedly prepared an application for the life insurance policy, which referred to the Trust.[22] Genworth allegedly issued the insurance policy with the Trust as a beneficiary and Geller as trustee.[23]

After Warren died, Genworth allegedly refused to release the life insurance funds without proof of the Trust.[24] The complaint states that Nelson submitted a Proof of Claim form instead of a valid Trust document, and Genworth then accepted the form "negligently and in breach of fiduciary responsibility[.]"[25] Morgan Keegan, an investment bank corporation, had allegedly opened a Trust account in Texas based

---

[18] *Warren v. Geller et al.,* E.D. La. Case No. 11-2282, R. Doc. No. 281, ¶ 2 (second amended complaint).
[19] *Id.* ¶¶ 3, 13.
[20] *Id.* ¶ 14.
[21] *Id.* ¶¶ 15–16.
[22] *Id.* ¶¶ 17–18.
[23] *Id.* ¶ 20.
[24] *Id.* ¶ 29.
[25] *Id.* ¶ 30.

4

on an eight-page Trust document that Nelson "fraudulently created."[26] Genworth then allegedly wired $1,000,300.00 to Morgan Keegan, which Morgan Keegan placed in the Trust account.[27] According to the complaint, Morgan Keegan employees then transferred Trust funds to Geller's accounts.[28] The Trust "was to generate $75,000.00 in interest investments on the $1,000,300.00 per year[,]" but Geller "depleted a majority of the Trust funds within nineteen months[.]"[29] Mrs. Warren sought over $2,000,000.00 in damages.[30]

Following successful settlement negotiations, on January 23, 2014, another section of this Court dismissed the plaintiffs' claims against Genworth, Nelson, and Nelson's errors and omissions liability insurance carrier, Continental Casualty.[31] Geller has now obtained copies of the relevant settlement agreements pursuant to two subpoenas duces tecum.[32] The settlement agreement between the plaintiffs, Nelson, and Continental Casualty states that the plaintiffs agreed to release Nelson and Continental Casualty from all claims for the sole consideration of $150,000.00.[33] The settlement agreement between the plaintiffs and Genworth states that the

---

[26] *Id.* ¶¶ 33–34.
[27] *Id.* ¶ 34.
[28] *Id.* ¶ 35.
[29] *Id.* ¶ 37.
[30] *Id.* ¶ 51.
[31] *Warren v. Geller et al.,* E.D. La. Case No. 11-2282, R. Doc. Nos. 355 and 356. On May 3, 2019, the court granted a motion filed by Morgan Keegan and its two employees seeking to confirm an arbitration award finding that there had been no breach of fiduciary duty. *Warren v. Geller et al.,* E.D. La. Case No. 11-2282, R. Doc. Nos. 401 (order granting motion to confirm arbitration award); 380-3, at 6 (arbitration award).
[32] R. Doc. Nos. 70 and 74.
[33] R. Doc. No. 75-2.

plaintiffs agreed to release Genworth from all claims for the sole consideration of $150,000.00.[34] The civil case is now closed.

## II. LAW & ANALYSIS

Pursuant to 18 U.S.C. § 3664(j)(2), "[a]ny amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in . . . any Federal civil proceeding; and . . . any State civil proceeding, to the extent provided by the law of the State." The defendant bears the burden of establishing any offset to a restitution order, including a post-judgment offset. *See United States v. Parker*, 927 F.3d 374, 381–82 (5th Cir. 2019) (citing *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998)).

The parties dispute whether the amounts Mrs. Warren received through the two civil settlement agreements were "compensatory damages for the same loss." Geller argues that these damages constituted the "same loss" because "the loss at issue in the civil suit was the same loss that was at issue in [Geller's] criminal case, [namely] the $592,319.66 in trust funds that [Geller] diverted to his own use."[35] The government instead argues that the settlement between Nelson and Mrs. Warren "was based on Nelson's actions[,] not the criminal conduct Geller committed against the victim," and that the settlement between Genworth and Mrs. Warren "involved a dispute regarding the issuance and administration of the policy and the release and disposition of the policy proceeds."[36]

---

[34] R. Doc. No. 75-3.
[35] R. Doc. No. 75-1, at 2.
[36] R. Doc. No. 79, at 7.

Although it appears that the government has the better part of this argument, the Court need not determine whether the settlement agreements involved the "same loss" as the criminal case to decide the instant motion. As the Fifth Circuit has made clear, "even assuming *arguendo* the settlement[s were] for the 'same loss', [§ 3664(j)] is inapposite." *United States v. Berry*, 795 F. App'x 229, 237 (5th Cir. 2019). "Section 3664(f)(1)(B) provides: 'In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.'" *Id.* (citation omitted). "A victim's receipt of third-party compensation for [her] losses" is "irrelevant" to the court's calculation of the defendant's total restitution liability. *Id.* (quoting *United States v. Thompson*, 792 F.3d 273, 278 (2d Cir. 2015)).[37]

"[W]here a third party has already reimbursed the victim's losses, § 3664(j)(1) simply shifts *payment* of the restitution amount calculated under § 3663A(b) directly to that party." *Berry*, 795 F. App'x at 237 (quoting *Thompson*, 792 F.3d at 279 (emphasis in original) (internal quotations omitted)). Geller does not argue that payment should be shifted to the parties that compensated Mrs. Warren through the settlement agreements.[38] Regardless, Geller would lack standing for such a request

---

[37] Accordingly, the Court need not evaluate the government's argument that the copies of the settlement agreements were insufficient to prove "actual payments made to the victim." R. Doc. No. 79, at 6.

[38] The government primarily opposes a reduction in restitution on the grounds that Geller "failed to offer any proof of actual payments made to the victim" pursuant to the settlement agreements and that Geller's restitution and the civil settlements do not arise from the "same loss." R. Doc. No. 79, at 1, 6. However, the government proposes that, in the event the Court were to find that the settlements and restitution *did* arise from the "same loss," the Court could "direct Geller to pay Continental

7

because he could not show an injury in fact. *See id.* "Any error concerning to whom the restitution is to be paid will not harm [Geller]: no matter the ultimate recipient, [he] remains liable for paying the same amount." *Id.* at 237.

### III.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Geller's motion is **DENIED.**

New Orleans, Louisiana, August 15, 2023.

_____
LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

Casualty $150,000 and Genworth $150,000 as reimbursement for their payment to the victim[.]" *Id.* at 10. Because the Court need not reach the "same loss" question to decide Geller's motion, the Court will not consider the government's alternative argument.